IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PAUL A. MANCINA, JR.,<br><br>   Plaintiff,<br><br>vs.<br><br>KEN SALAZAR, Secretary of the United States Department of the Interior,<br><br>   Defendant. | ORDER AND<br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:07 CV 157 (TC) |

  In this mandamus action, Plaintiff Paul Mancina, Jr., asks the court to order Secretary Salazar to process Mr. Mancina's application for a patent on property ("the property") near the Scofield Reservoir in Carbon County, Utah. Mr. Mancina filed his application for a patent pursuant to the Color of Title Act, 43 U.S.C. § 1068, which essentially authorizes adverse possession claims in limited circumstances against the United States. Because there is no dispute that the property left federal ownership more than 100 years ago, before the United States reacquired it, the Secretary is reasonable in concluding that the property is not public land and the Color of Title Act does not apply. Mr. Mancina has not demonstrated that he is entitled to mandamus, and the court grants summary judgment in favor of the Secretary.

## BACKGROUND

  The parties do not dispute the following material facts. Mr. Mancina claims an interest in the property. According to Mr. Mancina, his family got the property from predecessors in

1

interest who had occupied it since sometime before 1927.

A brief history of the title of the property is helpful here. The United States transferred the property to the State of Utah in 1894. Then, in 1927, it was deeded to the Price River Water Conservation District, which owned and operated a small reservoir. Some years later in 1945, the United States reacquired the property from the Price River Water Conservation District for the purpose of constructing the Scofield Reservoir.

In 1999, the United States brought an action to quiet title; the land that was the subject of that lawsuit included the property. The case was assigned to the Honorable Ted Stewart, a judge on this court. (A full discussion of the facts of the quiet title action can be found at United States v. Dunn, 557 F.3d 1165, 1167-70 (10th Cir. 2009).) In November 2005, while the quiet title action was pending in front of Judge Stewart, Mr. Mancina submitted an application for a patent for the property under the Color of Title Act.

In response to the application, Kent Hoffman with the Bureau of Land Management sent a letter to Mr. Mancina on February 23, 2006. He explained that until the quiet title litigation before Judge Stewart ended, the BLM thought it "necessary to suspend further processing and consideration of Color of Title Applications in and around the Scofield Reservoir area." (Ex. D, 2, Def.'s Mem. Supp. Summ. J., Docket No. 25.)

Mr. Hoffman further explained that the BLM questioned whether the Color of Title Act even applied to the property. Mr. Hoffman pointed out that the property had been conveyed out of federal ownership and reacquired by the United States and the Color of Title Act only gives the BLM "jurisdiction . . . over lands that never left federal ownership and have never been patented." (Id., 3.)

Mr. Mancina's counsel and Mr. Hoffman exchanged more letters regarding the patent

2

application. In a letter dated July 24, 2006, for example, Mr. Hoffman clarified that his February 23 letter was not intended to be a final agency action on the merits of the patent application but merely a policy statement. Mr. Hoffmann explained that his purpose in sending the letter was to inform Mr. Mancina of the BLM's view that the Color of Title Act did not apply as it allows a patent to issue only to "previously unpatented lands if and when there is no underlying title dispute." (Id., 13.) In the BLM's view, the property satisfied neither condition.

At the request of the BLM, Christopher Morley, an attorney with the Office of the Solicitor at the U.S. Department of Interior, responded to another letter from Mr. Mancina's counsel on August 24, 2006. Mr. Morley attempted to explain why the BLM had refused to process Mr. Mancina's application. He said that Congress has "tightly controlled" the authority to issue patents and delegated the BLM with authority over only public lands. (Ex. D, 19, Def.'s Mem. Supp. Summ. J., Docket No. 25.) Consequently, any application filed under the Color of Title Act had to satisfy conditions in order to be considered: The subject land must be public land and there could be no conflicting claim adverse to that of the applicant.

Mr. Morley noted that the property was not public land because it had been "previously patented out of the ownership of the federal government and then re-acquired by Reclamation." (Id.) For that reason, the BLM lacked jurisdiction to consider the merits of Mr. Mancina's application.

Mr. Mancina filed this action in March 2007, for a writ of mandamus pursuant to 28 U.S.C. § 1361. He asked the court to compel the Secretary of the Interior to issue a decision on his patent application, to enjoin the Secretary from pursuing the quiet title proceedings pending resolution of the pending patent application, and to order the Secretary to issue a patent for the property pursuant to the Color of Title Act.

The court stayed this action in August 2007, pending resolution of the quiet title action before Judge Stewart and the exhaustion of any appeals. In May 2009, the court lifted the stay after the Tenth Circuit ruled against Mr. Mancina in his appeal in the quiet title action.

The Secretary and Mr. Mancina have filed cross motions for summary judgment on Mr. Mancina's claims.

## ANALYSIS

Mr. Mancina asks this court to issue a writ of mandamus pursuant to 28 U.S.C. § 1361, compelling the Secretary of the Interior to process the application for a patent for the property. He goes one step further, asking the court to consider the merits of his application and to order the Secretary to issue the patent.

Mandamus is a "drastic remedy," which should be "invoked only in extraordinary circumstances." In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1186 (10th Cir. 2009) (quotations omitted). The right to such relief must be "clear and indisputable," with the petitioner bearing the burden of proof. Id. at 1187 (quotation omitted). Before a writ of mandamus may issue, three conditions must be met: (1) the party seeking issue can have "no other adequate means to attain the relief he desires"; (2) the party must demonstrate that the "right to the writ is clear and indisputable"; and (3) the court that would issue the writ, "in the exercise of its discretion, must be satisfied that "the writ is appropriate under the circumstances." Id. (quotations omitted). With these conditions in mind, the court considers Mr. Mancina's motion.

1.      **Other Means of Securing Relief**

The Secretary argues that Mr. Mancina has other adequate means to secure the relief he desires. The Secretary contends that Mr. Mancina should have brought this action under the

Administrative Procedure Act (APA). Section 706(1) of the APA directs that a federal court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). According to the established view in the Tenth Circuit, the purpose of the statute is to enable a court to force agency action when the court determines that the defendant official has failed to discharge a duty Congress intended to be performed. Forest Guardians v. Babbitt, 164 F.3d 1261, 1269 (10th Cir. 1998), amended in part, 174 F.3d 1178 (10th Cir. 1999). When considering the intention of Congress, the court should review the statute at issue and relevant legislative history. Forest Guardians, 154 F..3d at 1269. A claim can proceed under § 706(1) only if "'a plaintiff asserts that an agency failed to take discrete agency action that it is required to take.'" Kane County v. Salazar, 562 F.3d 1077, 1086 (10th Cir. 2009), quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in original).

The injunctive relief which is available under § 706(1) is "essentially in the nature of mandamus relief." Mt. Emmons Mining Co. v. Babbitt, 117 F.3d 1167, 1170 (10th Cir. 1997). While the Tenth Circuit has observed that the "availability of a remedy under the APA technically precludes [a] request for a writ of mandamus," courts have not necessarily denied the writ given the similar nature of the two remedies. Id.; see, e.g., Indep. Mining Co. v. Babbitt, 105 F.3d 502, 506-07 (9th Cir. 1997) (analyzing a mandamus claim under § 706(1) because of similarities in the nature of the relief).

So although the government might be correct that the availability of the remedy under § 706(1) precludes Mr. Mancina's request for a writ of mandamus, the court need not decide that issue. Because, regardless of whether the court analyzes the motions under the APA or the mandamus statute, the result will be the same: As explained below, Mr. Mancina has not demonstrated that the Secretary was required to process the application.

**2.     Right to the Writ and the Lawfulness of the Refusal to Act**

The second requirement for mandamus jurisdiction is that a defendant must owe the plaintiff a clear, nondiscretionary duty.  Mr. Mancina contends that the Color of Title Act imposes on the Secretary a duty to review and decide the patent application.

The related inquiry under the APA of whether the Secretary unlawfully withheld action also requires the court to interpret the Color of Title Act.  If a statute is clear and unambiguous, the court will interpret the statute to effect the intent of Congress.  Mt. Emmons Mining, 117 F.3d at 1171.  "'[W]hen a court is reviewing an agency decision based on a statutory interpretation, 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'"  Id., quoting Nat'l R.R. Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407, 417 (1992), quoting Chevron U.S.A. v. Natural Res. Defense Council, 467 U.S. 837, 843 (1984).

   A.     The Duty Imposed

The Color of Title Act essentially allows for a claim of adverse possession in limited circumstances against the United States.  The statute provides that the Secretary "must issue a patent when a claimant demonstrates that a tract of 'public land' has been held by the claimant, his ancestors, or grantors 'in good faith and in peaceful, adverse, possession . . . under claim or color of title for more than twenty years, and that valuable improvements have been placed on such land or some part thereof has been reduced to cultivation . . . .'"  Dunn, 557 F.3d at 1170, quoting 43 U.S.C. § 1068(a) (emphasis added); see also Utah ex rel. Div. of Forestry, Fire & State Lands v. United States, 528 F.3d 712, 726 (10th Cir. 2008) (summarizing same provision).  And the Secretary has "discretion to issue a patent when a claimant demonstrates that the claimant, his ancestors, or grantors have held 'public land' under claim or color of title since at

least January 1, 1901, and that they have paid taxes on the land." Dunn, 557 F.3d at 1170, quoting 43 U.S.C. § 1068(a) (emphasis added).  "'[N]o patent shall issue . . . for any tract to which there is a conflict claim adverse to that of the applicant, unless and until such claim shall have been finally adjudicated in favor of the applicant.'" Id., quoting 43 U.S.C. § 1068.

Because the parties do not discuss the ownership of the property before 1901, the court does not consider the application of this provision here.  The court focuses exclusively on the provision that concerns public land held under color of title for more than twenty years.

Despite Mr. Mancina's arguments, the language of this provision makes clear that the only duty Congress imposed on the Secretary through the Color of Title Act is the duty to "issue a patent" when "it shall be shown to his satisfaction that a tract of public land" meets several specified conditions.  43 U.S.C. § 1068.  Because this is the only duty imposed, it follows that the Secretary is required to process an application and to consider whether a particular plot of land meets the specified conditions "to his satisfaction" only if the land is public land.  Id.

B.      The Meaning of Public Land

Here, the Secretary refused to process Mr. Mancina's application because the Secretary concluded that the property was not public land but land that the United States had acquired for a particular purposes after it had been patented.  The meaning of the term public land is a matter of statutory interpretation.

When Congress passed the Color of Title Act in 1928 and revised it in 1953, it did not define the term public land.[1]  But the Secretary cites to case law from the period, which suggests that the term means land that was subject to sale or disposal under general land laws.  Kindred v.

---

[1] The relevant federal regulations are equally unhelpful.  See 43 C.F.R. pt. 2540 (2008).

Union Pac. R.R. Co., 225 U.S. 582, 596 (1912) (noting that public lands is, in its "ordinary meaning," a term "used to designate such lands as are subject to sale or other disposal under general laws"); Newhall v. Sanger, 92 U.S. 761, 763 (1875) ("The words 'public lands' are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws."); 63C Am. Jur. 2d Public Lands § 1(West 2009) ("The term 'public lands' generally refers to government lands that are open to public sale or other disposition under general laws and that are not held back or reserved for a governmental or public purpose."); see United States v. Vasarajs, 908 F.2d 443, 447 n.4 (9th Cir. 1990) (noting that the Color of Title Act "is limited by its own terms to 'public land.'  It has no application to land appropriated for purposes other than for public entry"); United States v. Schwartz, 460 F.2d 1365, 1372 (7th Cir. 1972) (noting that the Color of Title Act only governs public lands and concluding that the land at issue in the case were removed from public lands after they passed to a patentee).

The undisputed facts establish that the property is not public land.  The United States transferred the land at issue out of federal ownership and to the State of Utah in 1894.  The United States subsequently reacquired the property from the Price River Water Conservation District in 1945 for the express purpose of the construction (or expansion) of a federal reservoir.

Based on these undisputed facts, Mr. Mancina has failed to demonstrate that the Secretary had a clear, nondiscretionary duty to process the patent application because the Color of Title Act imposes a duty on the Secretary only to review applications for patents to public land.

\>

\>

\>

\>

## CONCLUSION

For the reasons set forth, Plaintiff's Motion for Summary Judgment is DENIED. (Docket No. 26.) Defendant's Motion for Summary Judgment is GRANTED. (Docket No. 24.)

SO ORDERED. DATED this 17th day of November 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge